The following is a copy of the material facts of the plaintiff's complaint: *Page 144 
(144) "1st. That some time during the year 1882, the plaintiff and defendants entered into an agreement, whereby defendants leased to plaintiff a hall in the town of Wilson, well known as Mamona Hall, and generally used for theatrical purposes. That said plaintiff agreed to fit up and furnish said hall so that it would be suitable for theatrical entertainments.
"2d. That plaintiff did equip and furnish said hall in all respects required.
"3d. That long before said lease expired, the defendants tore out from their place in said hall, the gas fixtures put there by plaintiff at much cost, and removed and damaged the other furniture put in said hall by plaintiff, and, without cause, deprived the plaintiff of the use of said hall, furniture and gas machine, to the plaintiff's great damage and injury, $1,500.00.
"Wherefore the plaintiff demands judgment for the sum of $1,500.00 and costs."
To this complaint the defendants filed their answer, whereof the following is a copy:
"1st. That as to allegation one, it is true that plaintiff and defendants entered into a contract or agreement, which is herewith filed as a part of this answer, marked A.
"2nd. That as to allegation three, the hall leased to plaintiff as aforesaid was the second story of a building owned by defendants, and of which the lower story, consisting of two stores, was leased to Branch 
Hadley, merchants, to carried therein large stocks of merchandise; that a short time after said lease, without the knowledge of the defendants, or the said Branch Hadley, the plaintiff placed in the roof of said building a large tank, filled with gasoline, a very dangerous and highly inflammable fluid, connected with lamps by means of pipes, to be used for the purpose of lighting said hall; that the first notice which Branch 
Hadley or the defendants had of the action of plaintiff, came from the insurance agents, who informed them that the policies of insurance on said stock of goods, and the building, as well as an adjoining (145) building which belonged to defendants, had been cancelled, and that no insurance would be carried on said property if the tank and gasoline remained in the roof; that therefore defendant A. Branch notified W. W. Hargrave, plaintiff's agent in Wilson, that the said tank must be removed, and in a few days he was informed by Hargrave that he had seen the plaintiff, and that the defendant had permission to remove the tank; that he therefore employed R.L. Wyatt, a skilled and experienced tinner, to remove the tank, with little or no damage thereto; that the tank was, after being emptied, placed in the *Page 145 
warehouse of Branch Hadley, where it remained, subject to plaintiff's order, until destroyed by fire during the month of November, 1884.
"3d. That as to allegation four, by the terms of said lease, it was expressly stipulated that the plaintiff should pay, quarterly, certain rents, and that upon failure to pay said rents, the lease should be forfeited, and the defendants might enter upon, and take the property in their possession; that the plaintiff did fail to pay the rent as stipulated, and the defendants, in the exercise of their rights under the lease, entered upon, and resumed possession of said hall; that plaintiff is now indebted to them — dollars for rent of said hall.
"For a further defence they say, that by reason of some tax imposed upon theatrical companies by the town of Wilson, the plaintiff announced publicly that he had abandoned the enterprise, and would no longer use the hall; that it is untrue that plaintiff has been damaged by any act of defendants.
"Wherefore defendants demand judgment that they go without day and recover their costs."
The following is a copy of the material facts of the case settled upon appeal for this Court.
The following issues were submitted to the jury:
1st. Have defendants violated their contract as alleged in the complaint? Answer — Yes.
2nd. Had plaintiff forfeited his lease by non-payment of rent (146) or otherwise? Answer — No.
3rd. What damage has plaintiff sustained by reason of said breach? Answer — $500.
Upon the first issue, the Court instructed the jury, that if they believed from the testimony, that the defendants had failed to plaster the walls as they had agreed to do, this was a breach of their contract, for which an action would lie, and they would therefore answer the first issue "Yes."
Upon the second issue, that if the jury believed from the testimony, that the plaintiff, at the time defendants took possession of the hall, had paid the rent, their answer to the second issue would be "No."
Upon the third issue, that the measure of damages were the probable profits which the plaintiff would realize from his lease, after payment of rent and expenses. To all of which the defendants excepted on the following grounds:
To the charge upon the first issue, because there is no allegation in the complaint that plaintiff was damaged by the non-plastering of the hall.
To the charge upon the second issue, because the Court left it to the jury to ascertain whether the rent had been paid or not, when he should *Page 146 
have charged them that if they believed the plaintiff's own testimony, the rent had not been paid, and as a matter of law, he had forfeited his lease.
To the charge upon the third issue, because the jury were not told that there was no evidence of the plaintiff's being damaged by the failure of defendants to plaster the hall.
The Court refused to grant a new trial, gave judgment for the plaintiff, and the defendants appealed.
It is the office of the complaint to state in a clear, succinct, and intelligible manner, the plaintiff's cause of action, and to demand judgment upon the same. The plaintiff cannot go to trial and recover upon a cause of action developed by facts stated in the answer, without alleging it himself. He must allege the cause of action in his complaint, and when the facts of the same are put in issue, prove them by competent evidence. He cannot rely upon a cause of action suggested in the pleadings by his adversary. Shelton v. Davis, 69 N.C. 324; Rand v. The Bank, 77 N.C. 152;McLaurin v. Cronly, 90 N.C. 50.
It is true, that in some cases, a defective or imperfect statement of a cause of action, may be aided by admissions in the answer, as was decided in Garrett v. Trotter, 65 N.C. 430, and Johnson v. Finch, 93 N.C. 205, but this is not one of them.
In this case, the complaint does not allege or assign a breach of the contract of lease. The lease is referred to simply for the purpose of showing the character of the plaintiff's right to have possession of, and use the hall and fixtures for his own benefit. The gravamen of the action, is the alleged trespass of the defendants "in tearing out from their place in said hall, the gas-fixtures put there by the plaintiff," the removal of the same, injury to the furniture, and depriving the plaintiff of the use of the hall and furniture. This is the cause of action specified, and there is none other. It may be, that the plaintiff might have alleged a breach of the contract of lease on the part of the defendants in interfering with his possession, and in failing to do certain things they stipulated to do, but it is obvious he did not do so. It is not sufficient that a party has a cause of action — he must allege it in such intelligible way, as that the Court can see, and take jurisdiction of it, and administer his right, if he shall establish it. *Page 147 
On the argument, the appellee's counsel contended, that the variance between the allegation and the proof was immaterial, or if material, it had not misled the adverse party to his prejudice, and under the liberal practice allowed by The Code, the plaintiff ought to (148) be allowed to prove a breach of the contract.
But broad and indulgent as are the provisions of The Code in respect to matters of pleading and practice, they do not dispense with a sufficient allegation of a cause of action to make it appear in the record, nor do they go to the latitudinous extent of allowing a party to prove a cause of action not alleged at all. Variances arise when the cause of action is alleged in the pleadings, and the proofs offered do not sustain it. In such cases, if the variance is immaterial, it will be disregarded; if material, and it misleads the adverse party, the Court may allow appropriate amendments to avoid it, upon just terms as to the trial and costs. The Code, Secs, 269, 270. As we have seen, no breach of contract was alleged in the complaint. The evidence offered in that respect, was therefore irrelevant, and no aspect of variance was presented.
For the like reason, the first issue was impertinent. It was not raised by the pleading, and ought not to have been submitted. The issues proper to be tried, must always arise upon the pleadings. Immaterial and impertinent issues ought not to be submitted to the jury. They never fail to produce more or less confusion, and in some cases, as where they are calculated to mislead or obscure the real issues, they afford good cause for a new trial.Miller v. Miller, 89 N.C. 209; Waddell v. Swan, 91 N.C. 108. The first exception, therefore, must be sustained.
And so also must the second exception. The plaintiff himself testified that he had "paid no rent except the first quarter, as I considered damages for removing my gas tank had paid it." It appeared that there was more than one quarter's rent due. The alleged damages did not constitute a legal set-off against the rent. The pleadings presented no equitable feature in the action. There was evidence tending to show that a quarter's rent was due and unpaid, and none tending to show that it had been paid, and the Court ought to have so instructed the jury.
The case states that the Court charged the jury, "that the (149) measure of damages were the probable profits which the plaintiff would realize from his lease, after payment of rent and expenses." In this there is error.
If the plaintiff was entitled to recover, his measure of damage was a sum of money equal to the cost of returning the oil tank, the gas-fixture, repairing the furniture injured, and such consequential *Page 148 
damages as were the direct result of the trespass; such as his inability, by reason of the injury, to use the hall, until it could be refitted for use, as it was at the time the injury was done. Hence also, if the plaintiff had existing engagements for theatrical entertainments, that were disappointed by the injury, damages sustained on that account might be embraced, but not for such as he might probably have had. The instructions given by the Court, were far too broad and indefinite — it embraced possible speculative damages, arising indirectly and remotely as a possible consequence of the trespass. Such damages are not recoverable. In the order of things and the course of business, the plaintiff might repair the injury and go on with his business. It is neither just nor reasonable that he should be allowed to abandon his business because of the trespass, and compel the trespassers to pay him a sum of money he might, by remote possibility, have realized from it in the course of an indefinite period of time. The trespass did not create in him the right to quit his business and have from the trespassers a gross sum of money, that he might perhaps have gotten by industrious and persistent effort. Boyle v. Reeder, 23 N.C. 607;Foard v. The Railroad Co., 53 N.C. 235; Sledge v. Reid, 73 N.C. 440;Mace v. Ramsey, 74 N.C. 11; Roberts v. Cole, 82 N.C. 292; Seely v.Alden, 61 Pa. St., 302; The Railroad Co. v. Hale, 83 Ill. 360.
In what we have said in respect to the measure of damage, we have not adverted to the fact that the plaintiff was not the absolute owner of the property, but a lessee for the term of five years, because the defendants were his lessors, and the owners subject to the lease. (150) If they were trespassers, they were bound to make reparation, and the property will return to them when the lease shall be over.
There is error for which there must be a new trial. To that end, let this opinion be certified to the Superior Court according to law, and it is so ordered.
Error. Reversed.
Cited: Porter v. R. R., 97 N.C. 70; Knowles v. R. R., 102 N.C. 65;Holler v. Richards, 102 N.C. 548; Simpson v. Simpson, 107 N.C. 562;Waller v. Bowling, 108 N.C. 297; Averitt v. Elliott, 109 N.C. 563; Huntv. Vanderbilt, 115 N.C. 563; Gwaltney v. Timber Co., 115 N.C. 585; Smithv. Building Loan Asso., 116 N.C. 111; Harris v. Quarry Co., 131 N.C. 555;Wright v. Ins. Co., 138 N.C. 499; Johnson v. R. R., 140 N.C. 579;Machine Co. v. Tobacco Co., 141 N.C. 292; Talley v. Granite Quarries Co.,174 N.C. 447; Sprout v. Ward, 181 N.C. 374; Builders v. Gadd, 183 N.C. 449;Brewington v. Loughran, 183 N.C. 562; *Page 149 Monger v. Lutterloh, 195 N.C. 278; McCullen v. Durham, 229 N.C. 427;Myers v. Allsbrook, 229 N.C. 790; Cox v. Freight Lines, 236 N.C. 79;Nebel v. Nebel, 241 N.C. 501.